UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff.<br><br>v.<br><br>JAMES CHRISTOPHER HOYT,<br>Defendant. | §<br>§<br>§<br>§  CRIMINAL NO. 1:25-CR-00257<br>§<br>§<br>§ |

**OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING TRIAL**

  This Court should deny Defendant's motion for release. Defendant seeks another bite at the detention apple after this Court has already found, after a full and robust hearing, that "[t]he most compelling justification for the continued detention of the defendant is the combination of his prior criminal conduct with the vast collection of child pornography and his continued online involvement in the distribution of child pornography with others." (Doc. 11, Order of Detention, at 2.) While Hoyt cites new medical developments, neither his diagnosis nor his proposed conditions of release alter the core concerns that justified detention in the first place: the danger he poses to the community and the risk that he will reoffend if given access to the internet or contact with vulnerable populations. Indeed, federal custody is equipped to handle inmates with serious medical needs, including complex oncology care, and any deficiencies in schedule or classification can be remedied through direct court orders without granting release. In short, Hoyt's medical condition, though serious, does not overcome the legal and factual basis for detention, and therefore his motion should be denied.

  On May 2, 2025, this Court issued an Order of Detention after a hearing. (Doc. 11, Order of Detention (hereafter "Order").) At the outset, that Order properly noted the presumption of

detention under 18 U.S.C. § 3142(e)(3) and (f)(1). (Order at 1.) That presumption continues to apply to the instant motion. Thereafter, this Court properly found "by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance because there is a serious risk that the defendant will flee and, by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community." (*Id*.) This Court correctly reasoned that the decision to detain was based in part on the serious nature of the charges, namely the exploitation of children and the significant penalties associated with such crimes. (*Id* at 2.) Additionally, this Court reasoned that Defendant's "enormous financial resources coupled with his age and the likely long penitentiary sentence gives the Defendant both the ability and motivation to flee the jurisdiction." (*Id*.)

None of the new facts have any impact on this Court's reasoning for detention in May. The Defendant still has "enormous financial resources," as evidenced in the Pretrial Services Report in May, and as further evidenced by his request to go to an in-patient treatment facility for his acknowledged pedophilia.[1] Moreover, none of the new facts rebut the presumption or this Court's conclusion by clear and convincing evidence that nothing will reasonably assure the safety of the community due to this Defendant's "prior criminal conduct with the vast collection of child pornography and his continued online involvement in the distribution of child pornography with others", even after having been caught and confronted by state and federal law enforcement for child exploitation matters in the past.

Moreover, the psychological reports by the psychologists that Defendant hired in anticipation of this motion note that "Hoyt meets criteria for a diagnosis of pedophilic disorder,"

---

[1] The Sante Center where Defendant wants to go costs $19,500 for a 30-day stay, and he would be expected to stay approximately two months.

which is defined by "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children over a period of at least six months." (Def.'s Ex. F at 2; *see also* Ex. G at 4 (Hoyt "has a history consistent with the diagnosis of pedophilic disorder".) Indeed, his psychological records make clear that he has admitted to being a "minor attracted"[2] man and that he "struggles with consuming CSAM." (Def.'s Ex. G at 2.) Hoyt also acknowledged that he has already gone through 5 years of sex offender therapy, but has "sought out CSAM before and keep saying I'll stop and I eventually always go back." (*Id.*)

Importantly, the Defendant's proposed conditions of release—placement in private "sex addiction" treatment facility, GPS monitoring, home detention, third-party custodian, and no-minor-contact rules—all depend almost entirely on the defendant's own compliance and third-party enforcement. Indeed, there is no guarantee that Sante Center will actually accept Defendant because they still have to do their own psychological assessment to determine where he falls on the spectrum between "sex offender" and "sex addict." If they determine that he is already an offender, they likely will not accept him. Additionally, the Sante Center is not a locked facility, contrary to Dr. Burrows's statement. (*See* Def.'s Ex. G at 4 ("Sante…is a locked facility.").) In fact, it's located on 16 acres with camera monitoring, but a patient can walk away anytime, especially during off-site medical appointments. Given the seriousness of the underlying allegations, the Court cannot reasonably rely on those safeguards to protect the community, especially when Defendant's own doctor does not have the facts correct.

---

[2] The term "minor attracted person" (MAP) "is part of the nomenclature of contemporary pro-pedophile movements seeking social and legal rights for those with a sexual interest in children and is not a neutral or scientific synonym for pedophile." Farmer C, Salter M, Woodlock D. A Review of Academic Use of the Term "Minor Attracted Persons". Trauma Violence Abuse. 2024 Dec, available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11545205/ (last accessed Sept. 22, 2025).

Defendant's Motion cites several "new, material medical developments that were not before the Court" in May at the time of the detention hearing as a basis for the instant Motion. But the centerpiece of Defendant's motion is actually just one medical development: One lab test, as interpreted by his oncologist's note, indicates his cancer is no longer in remission and that he will likely need therapy resumption within the coming weeks. The United States does not dispute the seriousness of that diagnosis, but it does not establish that release is the only way to secure necessary treatment. The United States Marshals Service, and the Burnet County Jail where Hoyt is designated at the moment, routinely manage inmates with cancer, including by arranging outside specialist care when necessary. Courts have consistently recognized that medical issues, even serious ones, do not warrant release where treatment can be provided in custody.

The United States submits that there have not been any lapses in coordination, contrary to Defendant's assertion. Indeed, below is a timeline of Hoyt's medical issues since his arrest, provided by the individual in charge of managing Hoyt's medical care at Burnet County Jail:

- Booked: 04/29/2025 @ 1301
- Medical intake: 04/30/2025 2337
- Chronic care provider visit: 05/06/2025
- Records received from Texas Oncology 05/06/2025
- Submitted PMR for oncology visit. 05/28/2025
- Sick call submitted concerned about active cancer. 06/30/2025
- Provider sick call visit. 07/01/2025
- Received PMR approval for oncology visit. 07/08/2025
- Called Texas Oncology to schedule visit, Bertha in billing needed PMR approval for review before scheduling appt. Instructed clinic to call to schedule appt.07/10/2025

- Sent for approval for lab work 07/14/2025
- Lab PMR approved. 07/16/2025
- Labs collected 07/18/2024
- Labs resulted, cbc results not included due to clotting. 07/19/2025
- Labs redrawn 08/18/2025
- Labs resulted 08/19/2025
- Reached out to Texas Oncology to schedule appt due to lab results. Sent lab results for review. 08/20/2025
- Sent jail admin medical OR request 08/20/2024
- Texas Oncology called to schedule appt for 09/02/2025
- Received visit notes from Texas Oncology 09/05/2025
- Submitted PMR's for CT scans and labs 09/05/2025
- Received PMR approvals for labs and CT scan. Sent to Texas Oncology for review and schedule 09/09/2025

From this timeline, it is clear that Hoyt is receiving timely medical attention from those in charge of his care while in custody. Thus, the United States submits that the relevant authorities have properly coordinated the entire time. Even if this Court were to find some error in coordination, it can direct the USMS to expedite oncology referrals and require regular status updates to the Court. Such measures address the defendant's health needs without creating the risks inherent in releasing him into the community.

      Nor do Defendant's medical developments constitute the type of changed circumstances that justify reconsideration under 18 U.S.C. § 3145(b). The progression of a chronic illness is unfortunate but not unforeseeable, and it does not alter the danger analysis under § 3142. Courts

applying § 3142(i) have repeatedly emphasized that temporary release for "compelling reasons" is reserved for extraordinary cases in which detention facilities are unable to provide necessary medical care. That high threshold has not been met here.

For example, in *United States v. Walz*, the court recognized that even a defendant with congestive heart failure, COPD, and a candidacy for heart transplant did not qualify for release under § 3142(i) because the jail and U.S. Marshals were able to accommodate his medical appointments and ensure medication compliance. 2023 WL 4581310, at *4 (D. Minn. July 18, 2023) ("To be clear, the Court is not indifferent to Defendant's medical condition. The Court appreciates that confinement may not be the preferred, optimal environment for someone with his condition. But, these less-than-ideal circumstances do not provide a compelling reason for Defendant's release when viewed in conjunction with the serious safety concerns that formed the basis of his detention in the first place."). Similarly, in *United States v. Hagga*, the court found that a defendant with Crohn's disease requiring IV infusions could remain detained because the seriousness of his charges and criminal history outweighed medical concerns, particularly where the jail could facilitate his treatment. 2021 WL 5822300, at *7 (W.D.N.Y. Dec. 8, 2021) (noting that the defendant's medical conditions had not dissuaded him from the criminal activity; the same is true for Defendant Hoyt who had cancer while committing the charged crimes and could do so again if granted release).

The principle is the same in *United States v. Smith*, where the court held that cancer and related health conditions "cannot be dispositive" because the defendant could receive the necessary treatment in custody. 2007 WL 2007588, at *2 (D.D.C. July 9, 2007) ("Although the Court appreciates that Smith has a serious medical condition for which he requires periodic medical attention, as well as other medical conditions for which he requires ongoing medication and

treatment, his health problems cannot be dispositive here. Smith can receive the medical treatment he requires while detained at the Correctional Treatment Facility.") Likewise, in *United States v. Underwood*, the District Court overturned the Magistrate Judge's decision to release the defendant, rejecting the request for release based on hypoglycemia, bone deterioration, and pending prostate cancer tests, concluding that the United States had carried its burden to show detention was necessary to protect the community, notwithstanding the medical issues. 2000 WL 269790, at *4 (D. Kan. Feb. 15, 2000).

Taken together, these cases confirm that § 3142(i) is not satisfied by serious or even life-threatening medical conditions where treatment can be arranged in custody. Just as in *Walz*, *Hagga*, *Smith*, and *Underwood*, Defendant Hoyt's health problems here, though real, can be managed by the Marshals, via TK Health at the Burent Count Jail, through outside oncology referrals and monitoring. His circumstances do not rise to the rare case in which release is required, and therefore the motion should be denied.

Respectfully submitted,

MATTHEW R. GALEOTTI
ACTING ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY:   /s/ Austin M. Berry
      AUSTIN M. BERRY
      TRIAL ATTORNEY

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to all attorneys of record.

                                              /s/ Austin M. Berry
                                              Austin M. Berry
                                              Trial Attorney

Case 1:25-cr-00257-ADA-SH   Document 32   Filed 09/22/25   Page 8 of 9

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § | |
| Plaintiff. § | |
| § | |
| v. § | CRIMINAL NO. 1: 25-CR-00257 |
| § | |
| **JAMES CHRISTOPHER HOYT,** § | |
| Defendant. § | |

**ORDER**

BEFORE THE COURT is the Defendant's Motion For Release Pending Trial. The Court having considered the Motion finds that the Motion should be DENIED.

SIGNED on this _____ day of _____, 2025.

_____
UNITED STATES MAGISTRATE JUDGE