**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **1:25-cr-00257** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| **JAMES CHRISTOPHER HOYT** | § | |
| **Defendant** | § | |

## DEFENDANT'S BRIEF OPPOSING ORDER OF FORFEITURE AS TO REAL PROPERTY

**TO THE HONORABLE SUSAN HIGHTOWER, UNITED STATES MAGISTRATE JUDGE:**

Defendant James Christopher Hoyt ("Mr. Hoyt"), by and through undersigned counsel, files this Defendant's Brief Opposing Order of Forfeiture as to Real Property, and show the Court the following:

*(Nexus and Excessive Fines)*

The Government asks this Court to forfeit Defendant's primary residence, owned free and clear, based on the theory that the home "facilitated" the offense because (i) devices were stored there, (ii) Tor activity was associated with the home internet service, and (iii) the privacy of the home allegedly made the crime easier and investigation harder. That is not the statute Congress wrote. Section 2253(a)(3) authorizes forfeiture only of property "used…to commit or to promote the commission" of the offense, and Rule 32.2 requires the Court to determine whether the Government has established the requisite nexus between the property and the offense.

Even assuming arguendo some nexus, forfeiture here is punitive and therefore subject to the Excessive Fines Clause. See Austin v. United States, 509 U.S. 602, 610 (1993); Timbs v.

Indiana, 586 U.S. 146 (2019). At the Court's May 29, 2026, hearing, the United States acknowledged that "forfeitures are punitive".

The only remaining question is proportionality: whether taking an entire, unencumbered primary residence valued around $650,000—more than 2× the $250,000 maximum fine for an individual felony, 18 U.S.C. § 3571(b)(3)—is grossly disproportional. Under United States v. Bajakajian, 524 U.S. 321, 334 (1998), and the Fifth Circuit's United States v. Wallace, 389 F.3d 483, 485–86 (5th Cir. 2004) framework, it is.

## I.
### The Government Has Not Established the Requisite Nexus Between the Residence and the Offense

**A. Rule 32.2 requires a property-specific nexus to the *real property*, not merely proof of device use at a location.**

Section 2253(a)(3) mandates forfeiture only of property "used or intended to be used to commit or to promote the commission" of the offense, and Rule 32.2 requires the Court to determine whether the Government has established the "requisite nexus" between the property and the offense. That inquiry is property-specific. Evidence that a device was used, that storage media were located inside a home, and that internet activity occurred through an IP address assigned to residential service may establish nexus to the *devices* and *connectivity* used in the offense, but it does not, standing alone, establish that the fee-simple land and structure were "used ... to commit or to promote" the offense.

**B. The Government's theory depends on an exclusivity/necessity premise that the evidentiary record does not establish.**

The Government's facilitation theory implicitly rests on an exclusivity premise—i.e., that the Residence was the necessary or uniquely instrumental platform for the criminal conduct because certain uploads and access events were associated with the home's assigned internet

*James Hoyt Nexus and Excessive Fines Brief*

service and because devices were accessed there. But FBI Special Agent, Brandy Horton, testified that the Defendant's servers could be accessed remotely from "*anywhere*"; the agent simply lacked proof that Defendant accessed them outside the Residence. The absence of proof is not proof of absence, particularly given the substantial gap between the investigation's inception in mid-2022 and execution of the search warrant in November 2023, during which the record does not reflect continuous monitoring sufficient to establish that all relevant access was exclusive to the Residence. Where the Government's own witness concedes remote access is possible, the Government cannot carry its burden by converting they did not prove access elsewhere into a finding that the Residence was uniquely necessary to commit or promote the offense.

**C. "Privacy" and "harder to investigate" cannot supply the missing nexus, and the Government's own evidence undercuts the claim that privacy was a property-specific contribution.**

The Government also argues that the Residence "promoted" the offense because the home's privacy made the conduct easier and harder to detect. But Special Agent Horton testified that a user can upload or download this material without viewing the images at all—files can be selected by name—and that, as a practical matter, a person could engage in this conduct from virtually "anywhere" without drawing attention. That testimony undercuts the premise that privacy of the home was the Residence's property-specific contribution to the offense. If the conduct can be carried out without visibly viewing images and without any need for seclusion, then privacy of the home is not what made the crime possible or meaningfully easier. What remains is proof that certain acts occurred while Defendant used devices and internet service associated with the address—not proof that the fee-simple land and structure were used to commit or promote the offense in a uniquely instrumental way.

More broadly, treating ordinary residential privacy as the property's "use" collapses the nexus inquiry into a limitless situs rule: if doing it indoors, in private, is enough, then any internet offense committed from any private place would automatically forfeit that place, converting Rule 32.2's "requisite nexus" requirement into a mere statement of where the keyboard happened to be.

**D. This case lacks the kind of property-dependent facts that make real-property nexus certain; at most the evidence supports forfeiture of instrumentalities, not the fee-simple home.**

In cases where real-property nexus is clear, the residence is not merely where a defendant happened to use a computer; it is the physical base of operations whose continued existence is necessary to the criminal enterprise. In that setting, for example, facts could show that the home itself was configured as a dedicated hosting/distribution site—e.g., a purpose-built server room with installed infrastructure (dedicated wiring/cable runs, power backup/cooling), a static IP and port-forwarding configured to receive inbound traffic, and forensic/ISP logs demonstrating continuous inbound connections from third parties to a service hosted from the home. A search warrant would find the server running live with administrative consoles and operational scripts such that if you remove the house—the hosting location, physical server infrastructure, and line—the criminal enterprise stops. Essentially, the hosting function depended on that property/home. That is real-property facilitation in a property-dependent sense: the house itself is being used as the instrumentality. That simply is not this case.

**II.**

**Even Assuming Some Nexus, Forfeiture of the Entire Unencumbered Primary Residence Is an Unconstitutional Excessive Fine**

**A. The Excessive Fines Clause applies; the only question is proportionality.**

The Government has conceded "forfeiture is punitive". Punitive forfeitures are subject to the Excessive Fines Clause. The Supreme Court has repeatedly emphasized that forfeiture triggers

the Clause when it serves, at least in part, punitive purposes. *Austin v. United States* (forfeiture subject to Excessive Fines Clause where it "can only be explained as serving in part to punish"). Although Tyler was resolved on Takings grounds and the Court did not reach the Excessive Fines claim, Justice Gorsuch's concurrence cautions lower courts against evading Eighth Amendment scrutiny by relabeling deterrent economic sanctions as "remedial," emphasizing that "Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive." Tyler v. Hennepin Cty., 598 U.S. 631, 143 S. Ct. 1369 (2023) (Gorsuch, J., concurring).

**B. The controlling test is Bajakajian; the Fifth Circuit applies it through Wallace.**

In Bajakajian, the Supreme Court held: "If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional."

The Fifth Circuit applies Bajakajian through the Wallace factors, including:

(1) essence of the offense and its relation to other criminal activity;

(2) whether defendant falls in the class targeted by the statute;

(3) the maximum authorized sentence, including the fine; and

(4) the nature of the harm.

**C. The math is dispositive: the forfeiture sought is more than 2× the maximum fine.**

Here, the Government seeks forfeiture of a primary residence owned free and clear, valued around $650,000. The maximum fine for an individual felony is $250,000. 18 U.S.C. § 3571(b)(3). That means the forfeiture is more than double the maximum fine—a powerful indicator of gross disproportionality under Wallace factor (3).

This also defeats the Government's reliance on the oft-quoted dictum from *Hull* that forfeiture "within the permissible range of fines" is "presumptively not excessive." Even if that

*JAMES HOYT NEXUS AND EXCESSIVE FINES BRIEF*

nonbinding dictum were adopted, it cannot apply when the forfeiture value exceeds the maximum fine.

## D. The weak "instrumentality" showing amplifies the excessiveness.

The Excessive Fines Clause is especially important where the Government seeks to take a home based on a theory that the house was primarily a container for devices and a private place to use them. Even if some nexus exists, the residence's role (storage/access at a location where Defendant lived) is not the kind of property-dependent facilitation that justifies the extreme economic penalty of taking an unencumbered primary home.

In other words: the weaker the property-specific facilitation, the more the forfeiture looks like a punitive windfall untethered from a principled instrumentality concept—precisely the sort of excess the Eighth Amendment forbids. And as noted, the Government conceded during the hearing that "forfeiture is punitive."

### III.
### Requested Relief

Defendant respectfully requests that the Court deny forfeiture of the Residence under § 2253(a)(3) on the record developed through Special Agent Horton's testimony at the hearing on May 29, 2026, and the parties' submissions addressing the requisite nexus and the Excessive Fines Clause.

Respectfully Submitted.

/s/ David M. Thomas
David M. Thomas, J.D.
Attorney for James Christopher Hoyt
816 Congress Avenue Suite 950
Austin, Texas, 78701
Telephone: 512-599-9000
Fax: 512-236-5459

Email: David@DWIman.com

/s/ Jeff Senter
Jeff Senter, J.D.
Attorney for James Christopher Hoyt
501 Congress Suite 150
Austin, Texas, 78701
Telephone: 512-482-8112
Fax: 512-482-0076
Email: Jeff@JeffSetnerPC.com

/s/ Dan Wannamaker
Attorney for James Christopher Hoyt
13809 Research Blvd Suite 500
Austin, Texas, 78750
Telephone: 512-236-9929
Fax: 512-233-5979
Email: dhw@wannamakerlaw.com