UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | 1:25-cr-00257 |
| Plaintiff | § | |
| | § | |
| v. | § | |
| JAMES CHRISTOPHER HOYT | § | |
| Defendant | § | |

**DEFENDANT'S RESPONSE TO THE UNITED STATES' OBJECTIONS TO THE REPORT AND RECOMMENDATION AND DEFENDANT'S LIMITED OBJECTIONS**

**TO THE HONORABLE ALAN D. ALBRIGHT, UNITED STATES DISTRICT JUDGE:**

Defendant James Christopher Hoyt respectfully requests that the Court overrule the United States' Objection to the Report and Recommendation (Doc. 70) and adopt the Magistrate Judge's recommendation denying forfeiture of the Subject Real Property as an unconstitutional excessive fine. Defendant also files two limited objections: (1) Defendant preserves his objection to the Report and Recommendation of the United States Magistrate Judge ("R&R") finding that the Government established the requisite real-property nexus under Rule 32.2 and 18 U.S.C. § 2253(a)(3); and (2) Defendant objects to the R&R only to the extent it recommends that the Court instead impose the statutory maximum fine of $250,000. The proper remedy for an unconstitutional forfeiture is to deny forfeiture. The amount of any fine should be decided at sentencing on the complete sentencing record.

**I.**
**Standard of Review**

The Court reviews de novo any portion of the R&R to which a party specifically objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The Court may accept, reject, or modify the recommended disposition. Fed. R. Crim. P. 59(b)(3).

## II.
## The United States' Objections Fail Under the Excessive Fines Clause

### A. The R&R asked the right constitutional question: is taking this home too much punishment?

A punitive forfeiture violates the Excessive Fines Clause if it is "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The R&R applied that rule. It recognized the seriousness of the offense, but it also considered the severity of the specific economic punishment the Government seeks: forfeiture of Defendant's entire unencumbered primary residence. Doc. 68 at 4–5.

The Government's objection tries to change the question. It repeatedly emphasizes that this is a serious offense and that courts have upheld forfeitures in other cases. Doc. 70 at 5–10. The seriousness of the offense is not disputed. But the Eighth Amendment does not ask only whether punishment is warranted. It asks whether *this punishment* is too much. If the seriousness of an offense automatically answered that question, the Excessive Fines Clause would provide no protection in the cases where the Government seeks the harshest economic penalties. A serious crime justifies serious punishment. It does not justify unlimited punishment. In a serious case the Government can always say:

1.  the conduct was grave;

2.  the defendant is exactly the type of person Congress intended to punish; and

3.  the harm was substantial.

Those points may all be true. But if those facts automatically justify forfeiture of any asset of any value, then there is no upper limit. Under that approach, the government could take a $250,000 home, or a $500,000 home, or a $2 million home, or a $10 million dollar home, and the answer would always be the same: "the offense was serious." At that point, the Excessive Fines Clause

performs no work. It becomes impossible for any forfeiture to be excessive in a serious case, no matter how valuable the property is.

**B. The *Wallace* factors are not a vote count; they answer different questions.**

The Fifth Circuit considers four factors when deciding whether a forfeiture is grossly disproportional: (1) the essence of the offense and its relationship to other criminal activity; (2) whether the defendant falls within the class of persons targeted by the statute; (3) the maximum authorized sentence, including the fine; and (4) the nature of the harm. *United States v. Wallace*, 389 F.3d 483, 485–86 (5th Cir. 2004); *United States v. Suarez*, 966 F.3d 376, 385 (5th Cir. 2020). The Government treats those factors like a vote count: because factors (1), (2), and (4) favor severe punishment, it argues factor (3) cannot carry meaningful weight. Doc. 70 at 2–3, 10. But the factors answer different questions. Factors (1), (2), and (4) explain why this case warrants serious punishment. Factor (3) asks how far a particular economic punishment may go before it becomes excessive. It anchors the analysis to the penalties Congress actually authorized.

The Supreme Court explained why that anchor matters: "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Bajakajian*, 524 U.S. at 336. The statutory maximum fine is not an automatic cap on every forfeiture. But it is not meaningless either. When the Government seeks property worth roughly twice the maximum fine Congress authorized, the Court must decide whether the requested forfeiture has crossed the line from severe punishment into excessive punishment.

That is what the R&R did. It did not minimize the seriousness of the offense. It expressly found that factors (1), (2), and (4) favor the Government. Doc. 68 at 4. It then gave factor (3) real weight and concluded that taking an unencumbered home worth more than twice the statutory maximum risks substituting a judicial punishment judgment for the legislature's. Doc. 68 at 5. The Government's approach would create a one-way rule: when the property value falls within the

statutory fine range, the Government invokes a presumption of constitutionality; when the property value exceeds that range, the Government says the Court should simply ignore that fact because the offense is "serious." Under that approach, factor (3) could never meaningfully protect a defendant. The Excessive Fines Clause requires more than that.

The Government attempts to avoid that conclusion in two ways: first, by misreading *Bajakajian* as creating a numerical safe harbor; and second, by invoking a *Wallace* presumption that applies only when the forfeiture falls within the statutory fine range. Neither argument works.

**C. The R&R does not contradict *Bajakajian*; the Government's argument depends on a result the Supreme Court expressly declined to decide.**

The Government asserts that the R&R "contradicts the result in *Bajakajian*" because the Supreme Court supposedly approved a forfeiture equal to three times the maximum fine. Doc. 70 at 5–6. The Government then treats that ratio as a constitutional safe harbor: if a forfeiture of three times the maximum fine survived in *Bajakajian*, the argument goes, forfeiture of a home worth roughly twice the maximum fine must be constitutional here.

That is not what *Bajakajian* held. The Supreme Court held that forfeiture of the entire $357,144 sought by the Government was grossly disproportional and therefore unconstitutional. *United States v. Bajakajian*, 524 U.S. 321, 337–40 (1998). The district court had imposed a reduced forfeiture of $15,000 in addition to a $5,000 fine, but the defendant did not cross-appeal that reduced amount. As a result, the constitutionality of the $15,000 forfeiture was not before the Supreme Court. The Supreme Court said so expressly:

> The only question before this Court is whether the full forfeiture of respondent's $357,144 as directed by § 982(a)(1) is constitutional under the Excessive Fines Clause. We hold that it is not…. Our holding that full forfeiture would be excessive reflects no judgment that "a forfeiture of even $ 15,001 would have suffered from

a gross disproportion," nor does it "affirm the reduced $15,000 forfeiture on *de novo* review. Those issues are simply not before us. *Id.* at 340 n.11.

The distinction matters. The Government is trying to convert an unreviewed procedural outcome into a constitutional multiplier rule. But *Bajakajian* did not hold that a forfeiture equal to three times the maximum fine is constitutional. It did not establish that "3× passes," much less that "2× passes." It established a case-specific rule: a punitive forfeiture is unconstitutional when it is grossly disproportional to the gravity of the offense. *Id.* at 334.

The R&R therefore does not contradict *Bajakajian*; it follows it. The Magistrate Judge evaluated the particular sanction the Government seeks here—taking Defendant's entire unencumbered primary residence—and determined that forfeiture of real property worth roughly twice the maximum fine Congress authorized crosses the constitutional line. Doc. 68 at 5. That is the proportionality analysis *Bajakajian* requires.

The R&R therefore did not contradict *Bajakajian*; it performed the case-specific proportionality analysis *Bajakajian* requires.

## D. *Wallace*'s "strong presumption" does not help the Government because it applies only in the opposite circumstance.

The Government correctly notes that *Wallace* recognizes a "strong presumption" of constitutionality when the value of forfeited property is within the range of fines prescribed by Congress. Doc. 70 at 6; *Wallace*, 389 F.3d at 486. But the residence is not within that range. Even using the Government's appraisal figure of $497,097, the requested forfeiture is roughly twice the $250,000 statutory maximum fine. Doc. 70 at 5. For purposes of this response only, Defendant uses the Government's figure without conceding that a tax appraisal establishes fair market value. The point is narrow but important: *Wallace*'s presumption does not apply. The absence of a presumption against the Government does not create a presumption for the Government. It means

the Court must conduct the case-specific proportionality review required by *Bajakajian*. The R&R did exactly that.

### E. The Government's Fifth Circuit cases do not establish that taking this home is constitutional.

The Government argues that forfeiture of the Residence is permissible because the Fifth Circuit has upheld forfeitures that exceeded an applicable fine benchmark. Doc. 70 at 3, 9–10. Defendant does not contend that every forfeiture above the statutory maximum fine is automatically unconstitutional. But the Government's cases do not establish the opposite rule either: that a forfeiture around 1.5× or 2× the maximum fine automatically survives Eighth Amendment review regardless of the property taken or the property's relationship to the offense.

*Wallace* does not establish that rule. There, the defendant was convicted of operating an unregistered airplane, and the Government forfeited the airplane itself. *United States v. Wallace*, 389 F.3d 483, 484–86 (5th Cir. 2004). The airplane was not merely the location where the offense occurred; it was the very object used to commit the offense. Without the airplane, there was no airplane offense. Its value—$30,000 or, under an alternative estimate, $53,000—was also below the then-applicable statutory maximum fine of $250,000. *Id.* at 486 & n.4. The Fifth Circuit discussed a "factor of two" only because it also considered an older, repealed $15,000 predecessor fine as an alternative point of reference. *Id.* at 486. Thus, *Wallace* shows only that a two-times ratio does not automatically invalidate a forfeiture. It does not hold that a two-times ratio automatically validates one.

*United States v. Suarez* is no closer. There, the Fifth Circuit upheld a $52,042 forfeiture arising from structured financial transactions because the amount was "a fraction of the statutory maximum and less than double the Guidelines maximum." 966 F.3d 376, 387 (5th Cir. 2020). That reasoning does not support forfeiture here. Even using the Government's appraisal, the Residence

is worth approximately $497,097—nearly twice the current $250,000 statutory maximum fine. *Suarez* confirms that the relationship between the forfeiture amount and the statutory maximum matters; it does not establish that a forfeiture nearly twice the statutory maximum is constitutional.

*United States v. Dennis* is materially different as well. There, the Fifth Circuit upheld a $7.2 million forfeiture order arising from a marijuana-distribution conspiracy. 41 F.4th 732, 746 (5th Cir. 2022). The forfeiture reflected proceeds attributable to Dennis' own involvement in the conspiracy, and the district court accounted for forfeited real property to avoid duplication. *Id.* "The district court also ordered Dennis to forfeit his weapons, boat, Houston properties, and $7,200,000 as proceeds of the offense." *Id* at 739. *Dennis* therefore addressed taking the value of drug proceeds tied to the defendant's illicit activity—not forfeiture of an entire unencumbered primary residence as an additional instrumentality-based punishment simply because computers were used inside of it.

This case presents a different question. The Government seeks Defendant's entire primary residence, owned free and clear and valued at approximately $497,097 even under the Government's appraisal. The Residence is not contraband. It is not proceeds. And even assuming the Government established some nexus, the home is not the direct instrumentality in the same way the unlawfully operated airplane was in *Wallace*. The Government has already obtained forfeiture of the computers, drives, servers, and storage devices that directly contained or transmitted the material.

The Government's Fifth Circuit cases therefore establish a narrow point Defendant does not dispute: exceeding a fine benchmark does not automatically invalidate a forfeiture. But they do not answer the constitutional question presented here. None holds that the Government may take an unencumbered primary residence worth roughly twice the current statutory maximum fine merely because the underlying offense is serious. *Bajakajian* still requires a case-specific inquiry

into whether this particular economic sanction is grossly disproportional. The R&R performed that inquiry and correctly concluded that forfeiture of the Residence crosses the constitutional line.

## F. Congress's authorization of forfeiture does not make every forfeiture constitutional.

The Government argues that Congress authorized forfeiture as an additional punishment and therefore contemplated punishment above the statutory fine range. Doc. 70 at 9. That observation does not resolve the Eighth Amendment question. *Bajakajian* itself involved a congressionally authorized forfeiture, yet the Supreme Court still held full forfeiture unconstitutional. 524 U.S. at 324, 337–40. If statutory authorization alone answered the question, Excessive Fines review would disappear whenever Congress authorized forfeiture. The Constitution requires a second step: the Court must still determine whether the particular forfeiture is grossly disproportional.

## G. The Government's remaining cases do not establish that forfeiture of this home is constitutional.

The Government cites several out-of-circuit cases approving forfeitures above an applicable fine benchmark. Doc. 70 at 7–9. Those cases establish a limited proposition Defendant does not dispute: a forfeiture does not automatically become unconstitutional merely because its value exceeds the statutory or Guidelines fine range. But they do not establish the opposite proposition—that a forfeiture automatically becomes constitutional whenever another court has approved a similar or larger multiplier in a materially different case.

The Government's lead case, *United States v. Rafael*, illustrates the point. 282 F. Supp. 3d 407 (D. Mass. 2017). There, the district court approved forfeiture of commercial fishing vessels and associated permits worth roughly eleven times the maximum Guidelines fine that Rafael agreed were direct tools of the offense. But the court expressly limited its conclusion to "the circumstances of this case." *Id.* at 413. Those circumstances were materially different: the vessels

and permits were business assets directly used to carry out a long-running commercial fishing scheme, and Rafael retained at least twenty other permitted vessels after forfeiture. *Id.* at 411–14. *Rafael* did not create an eleven-times safe harbor for every forfeiture involving different property and different facts.

The Government's remaining cases are similarly distinguishable. They involve proceeds, transaction-based forfeitures, commercial assets, or property directly used to commit the offense. See Doc. 70 at 8–9. Here, the Government has already obtained forfeiture of the computers, drives, servers, and storage devices that directly contained or transmitted the material. It now seeks, in addition, Defendant's entire unencumbered primary residence. The Residence is not contraband. It is not proceeds. And its asserted role is more indirect: it provided a location where electronic devices were stored and used.

The question is not whether forfeitures above a fine benchmark can ever survive constitutional review. They can. The question is whether taking this particular home, on this particular record, is grossly disproportional. *Bajakajian* requires that case-specific inquiry, and the R&R correctly concluded that forfeiture of the Residence crosses the constitutional line.

## H. The Government's "wealthier defendant" argument is policy, not constitutional analysis.

The Government argues that denying forfeiture would give wealthier defendants protection unavailable to poorer defendants. Doc. 70 at 7. That argument may have rhetorical appeal, but it is not the Eighth Amendment test. The Clause asks whether a punitive economic sanction is excessive. The value of the property is necessarily part of that inquiry. A constitutional limit does not disappear because the property the Government seeks is valuable. High-value property is precisely where proportionality review matters most.

## III.
## Defendant's Limited Objection to the R&R's Nexus Finding

Defendant preserves his objection to the R&R's finding that the Government established the requisite nexus between the Subject Real Property and the offense. Rule 32.2 requires a property-specific nexus. Fed. R. Crim. P. 32.2(b)(1)(A). Section 2253(a)(3) requires proof that the real property was "used or intended to be used to commit or to promote the commission" of the offense. The Government's proof shows that devices were located in the home and that internet activity occurred through service assigned to the residence. It does not necessarily follow that the fee-simple land and structure were themselves instrumentalities of the offense.

Criminal-forfeiture decisions recognize a limiting principle: a trivial, incidental, or interchangeable connection to property is not enough. See *United States v. Nicolo*, 597 F. Supp. 2d 342, 357 (W.D.N.Y. 2009) (use of properties as mailing addresses was "merely incidental or fortuitous"); *United States v. King*, 231 F. Supp. 3d 872, 897 (W.D. Okla. 2017) ("[P]roving that property made the crime easier to commit or harder to detect is only part of the government's burden, because many things may make a crime easier to commit in some trivial or incidental way, which is not enough. To prevail under the facilitation theory, the government must show that the degree to which the property facilitated the crime was substantial. This is known as the substantial connection test). Those cases arise in different statutory settings, but their reasoning addresses the same Rule 32.2 concern: the Government must establish more than situs.

As Defendant explained in his post-hearing brief, Special Agent Brandy Horton testified that the servers could be accessed remotely from *anywhere* and that uploading or downloading files did not require viewing the images because files could be selected by name. Doc. 67 at 2–4. The Government also did not establish continuous monitoring across the substantial gap between the investigation's inception in mid-2022 and execution of the search warrant in November 2023.

Page 10 of 13

*Id.* The record therefore does not show that the Residence itself enabled, advanced, or was necessary to the offense. It shows only that some activity occurred while Defendant was at home using devices and internet service associated with that address. Put simply, the Government proved that the conduct could be conducted *anywhere* and some conduct occurred *in* the house; it did not prove that the house itself was used as a tool of the conduct. The Residence was a situs, not an instrumentality. Its only proven role was that it was where James lived.

Defendant therefore requests that the Court decline to adopt the R&R's nexus finding. In the alternative, if the Court adopts the R&R's nexus finding, the Court should still adopt the recommendation denying forfeiture under the Excessive Fines Clause.

## IV.
### Defendant's Limited Objection to the Recommendation of an Automatic Maximum Fine

Defendant also objects to the R&R only to the extent it recommends that the Court instead impose the maximum fine of $250,000. Doc. 68 at 5. The maximum fine is a ceiling, not an automatic substitute remedy for an unconstitutional forfeiture. Once the Court determines that forfeiture of the residence is excessive, the correct remedy is to deny that forfeiture.

The amount of any fine should be determined at sentencing on the complete sentencing record, not imposed automatically as a substitute for unconstitutional forfeiture. Section 3572(a) requires the Court to consider the full set of sentencing factors applicable to a fine, including Defendant's income, earning capacity, financial resources, the burden imposed by the fine, any restitution obligation, and any need to deprive Defendant of illegally obtained gains. 18 U.S.C. § 3572(a). Defendant asks the Court not to prejudge the amount of any fine in this forfeiture proceeding. That determination should be made at sentencing after the Court considers the complete financial record and the total sentence imposed. The point is narrower: the statutory maximum is a ceiling, not an automatic fallback remedy. Whether the appropriate fine is

substantial, modest, or at the statutory maximum should be decided at sentencing after the Court considers the complete financial record and the total sentence imposed.

## V.
## Requested Relief

For these reasons, Defendant respectfully requests that the Court:

1. Overrule the United States' Objection to the Report and Recommendation (Doc. 70);

2. Adopt the R&R to the extent it recommends denial of forfeiture of the Subject Real Property under the Excessive Fines Clause;

3. Sustain Defendant's limited objection to the R&R's nexus finding, or alternatively preserve Defendant's nexus objection while adopting the recommendation denying forfeiture; and

4. Sustain Defendant's limited objection to the R&R's suggestion that the Court automatically impose the statutory maximum fine, leaving the amount of any fine for determination at sentencing on the complete sentencing record.

Respectfully submitted,

/s/ David M. Thomas
David M. Thomas, J.D.
Attorney for James Christopher Hoyt
816 Congress Avenue Suite 950
Austin, Texas 78701
Telephone: 512-599-9000
Fax: 512-236-5459
Email: David@DWIman.com

/s/ Jeff Senter
Jeff Senter, J.D.
Attorney for James Christopher Hoyt
501 Congress Suite 150
Austin, Texas 78701
Telephone: 512-482-8112
Fax: 512-482-0076
Email: Jeff@JeffSenterPC.com

/s/ Dan Wannamaker
Dan Wannamaker
Attorney for James Christopher Hoyt
13809 Research Blvd Suite 500
Austin, Texas 78750
Telephone: 512-236-9929
Fax: 512-233-5979
Email: dhw@wannamakerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2026, the foregoing instrument was electronically filed

with the Clerk of the Court using the CM/ECF system, which will transmit notification of such

filing to all counsel of record:

MARK TINDALL
Assistant United States Attorney
Texas Bar #24071364
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Tel: (512) 916-5858
Fax: (512) 916-5854
Email: mark.tindall@usdoj.gov

/s/ David M. Thomas
/s/ Jeff Senter
/s/ Dan Wannamaker
*Attorney for Defendant James Christopher Hoyt*

Page 13 of 13